IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| VIRGINIA BIGELOW, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05CV472 |
| | ) | |
| v. | ) | |
| | ) | |
| CENTRAL STATES HEALTH & LIFE CO., | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| | ) | |
| Defendant. | ) | |

  This matter is before the court on Defendant's motion for summary judgment. (Filing No. 25.) In support of its motion, Defendant filed a separate brief and index of evidence. (Filing Nos. 26 and 27.) Plaintiff filed two documents (filing nos. 36 and 40), which the court construes as responses to Defendant's motion for summary judgment. As set forth in this order, Defendant's motion for summary judgment is granted.

  Plaintiff Virginia Bigelow ("Bigelow") filed her complaint in this matter on October 7, 2005, alleging one claim of age discrimination under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621-34, and one similar claim under the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age ("Nebraska Act"), Neb. Rev. Stat. §48-1001 *et seq.* (Filing No. 1). Both claims rely on the same factual basis. (*Id.*) After engaging in discovery, defendant Central States Health & Life Co. ("Central States") filed its motion for summary judgment on April 20, 2007. (Filing No. 25.) Along with its motion, Central States filed a brief in support of its motion for summary judgment and an index of evidence in support of its motion for summary judgment. (Filing Nos. 26 and 27.)

Plaintiff Virginia Bigelow ("Bigelow") had 20 days in which to file a brief opposing Central States' motion for summary judgment, or until May 10, 2007. Neb. Civ. R. 7.1(b)(1)(B). On May 16, 2007, Bigelow filed a motion seeking an additional 30 days in which to respond to Central States' motion. (Filing No. 32.) The court granted Bigelow's motion, and allowed her to file a response to the motion for summary judgment no later than June 15, 2007. (Filing No. 33.) On June 18, 2007, Bigelow filed a document styled as a "reply" to filing no. 33. (Filing No. 36.) In filing no. 36, Bigelow requested that "Defendant's Motion for Summary Judgment and the date limit of June 15, 2007, not be granted." (*Id.* at 1.) Bigelow then stated reasons such as failure to obtain counsel, medical issues, and her attendance at an out-of-town convention as support for her request. (*Id.*)

The court entered an amended final progression order on June 6, 2007 which set a date for the final pretrial conference and trial. (Filing No. 35.) On August 7, 2007, Bigelow filed a document styled as a "reply" to filing no. 35. (Filing No. 40.) In filing no. 40, Bigelow restated her attempts to obtain counsel and stated that "the path left to Plaintiff is to rely on the documents and exhibits already submitted, plus her own deposition." (*Id.* at 1.) Bigelow did not submit any other documents in response to Central States' motion for summary judgment. Bigelow's filings show knowledge of her right to oppose Central States' motion for summary judgment. However, Bigelow did not submit to the court anything other than filing nos. 36 and 40, despite having ample time in which to do so.

As requested by Bigelow in her filing no. 40, the court treats all of the evidence submitted by Central States as also submitted by Bigelow. In light of this, the court has carefully reviewed the submitted documents and adopts the following undisputed material facts, the majority of which were set forth by Central States. The record before the court shows that none of these facts were controverted by Bigelow.

## I. RELEVANT UNDISPUTED FACTS

1. Bigelow is an individual residing in the City of Omaha, Douglas County, Nebraska. (Compl., filing no. 1 at ¶ 2.) Bigelow was born in 1934. (Dep. of Virginia Bigelow ("Bigelow Dep."), filing no. 27, Ex. A1 at 8:19-20.)[1] Central States is a Nebraska Corporation doing business in Omaha, Nebraska. (Compl., filing no. 1, at ¶ 3; Answer, filing no. 12, at ¶ 3). The parties do not dispute that this Court has jurisdiction, nor that venue is proper. (Parties' Rule 26 Planning Conference Report, filing no. 16, at 1.)

2. Bigelow applied for a position as an Underwriter with Central States in March 2003. (Bigelow Dep., Ex. A1, at 22:25-23:10; 24:5-7; Bigelow Dep., Ex. A8, at Ex. 2.) Kathy Giddings ("Giddings"), who at the time was Central States' 2nd Vice President, New Business, participated in Bigelow's interviewing process. (*Id.* at 25:5-9; Aff. of Kathy Giddings ("Giddings Aff."), Ex. B, at ¶ 1-3). Giddings made the final decision to hire Bigelow as an Underwriter in 2003. (Bigelow Dep., Ex. A1, at 25:3-5; Giddings Aff., Ex. B, at ¶ 3.) Bigelow began her employment with Central States on April 7, 2003. (Giddings Aff., Ex. B, at ¶ 4; Bigelow Dep. Ex. 4, Ex. A2, Bigelow Dep., Ex. A1, at 47:14-20.) At the time of hire, Bigelow was 68 years of age. (Bigelow Dep., Ex. A1, at 8:19-20.)

3. As an Underwriter, Bigelow's basic job responsibilities were reviewing submitted applications for clerical errors and signatures (Bigelow Dep., Ex. A1, at 18:4-14), conducting phone interviews of the applicant, and determining whether the application should be approved based on the information she gathered in the telephone interview. (*Id.* at 19:5-20:2; 20:15-21.) Bigelow's duties also required her to gather the applicant's general health history, the medications the applicant was taking, and the doctors the applicant had seen to assist her in making the decision

---

[1] All exhibits cited by the court are contained in filing no. 27.

whether to approve or deny the application. (*Id.* at 20:3-14.) The parties agree that Central States' Job Description for the position Underwriter/Case Analyst accurately describes Bigelow's duties and responsibilities as an Underwriter for Central States during her employment. (*Id.* a 26:18-27:17, 98:10-99:1; Bigelow Dep. Ex. 3, Ex. A3.) Bigelow testified that accuracy was an important aspect of her job at Central States, *id.* at 30:17-19, and that an employer has the right to define an employee's job responsibilities. (*Id.* at 21:18-21.) Bigelow also stated that an employee must follow the direction of his or her supervisor, as well as company procedures. (*Id.* at 21:22-22:3.)

4.  In January 2004, it appeared to Giddings that Bigelow had not reached a level of competence she would have expected an Underwriter to have given her years of experience and after working for nine months at Central States. (Giddings Aff., Ex. B, at ¶ 5.) On January 21, 2004, Giddings and Kathy Schoen ("Schoen"), 2nd Vice President, Human Resources, met with Bigelow to discuss her numerous performance problems and gave her a memorandum Giddings had written outlining those performance issues. (Bigelow Dep. Ex. 7, Ex. A4; Bigelow Dep., Ex. A1, at 50:7-22; Giddings Aff., Ex. B, at ¶ 6.)

5.  Some of the performance issues outlined in the January 21, 2004 memorandum (the "Coaching Memo") include Bigelow's problems managing faxed applications, applying premium on an application, underwriting applications to match their exposure and liability, handling money transactions, activating policies, using the pending sorter, filing point of sale (POS) interview forms, assuring appropriate assembly and retention of phone history interview forms (PHI's), and properly completing work-measurement sheets. (Bigelow Dep. Ex. 7, Ex. A4.)

6.  Central States first addressed Bigelow's handling of faxed applications in the Coaching Memo. (Ex. A4 at 1; Bigelow Dep., Ex. A1, at 50:23-51:8.) Central States advised Bigelow in the Coaching Memo that she had made several mistakes in faxed

applications by issuing the policy prior to receiving the initial premium check. (Ex. A4 at 1.) It cited a specific application that came through Agent Debbie Tashijan as an example of a faxed application that Bigelow had previously mishandled. (Bigelow Dep., Ex. A1, at 53:16-54:6; Ex. A4 at 1.) Bigelow agrees that she did not handle this specific faxed application according to Central States' procedure and had told Giddings "Oh yeah. Okay. I'm sorry. I'll redo it." (Bigelow Dep., Ex. A1, at 54:7-14.) Bigelow also agrees that she called the agent and explained that she handled the files in error. (*Id.* at 54:15-22.) The Coaching Memo stated the rationale for waiting for the premium check before issuing the policy, as failing to do so "caused the agent's [sic] to question our process and accuracy of handling files, not to mention the doubt it raised with the Insured." (Ex. A4 at 1.)

7. Central States documented in the Coaching Memo two additional file numbers in which Bigelow had mishandled the faxed applications because she issued the policy without waiting for the initial premium. (Ex. A4 at 2.) Although Bigelow does not remember these two files, there is nothing in the record contradicting the Coaching Memo on this point. (Bigelow Dep., Ex. A1, at 56:2-58:6.) After the meeting, Bigelow made notes on the Coaching Memo regarding issues she disputed and returned it to Giddings. (Ex. A4 at 2, 3 and 5; Bigelow Dep., Ex. A1, at 59:25-3, 76:14-19.) Bigelow did not make any notes with respect to handling faxed applications. (Ex. A4 at 1-2.)

8. The Coaching Memo also documented Bigelow's errors in applying premiums. (Ex. A4 at 2; Bigelow Dep., Ex. A1, at 61:24-62:5.) The Coaching Memo gave several examples of applications that Bigelow handled incorrectly by setting aside a check rather than placing it in the file, not handling checks in a timely manner, applying the money to the policy but failing to send the check to Corporate Finance, giving the check to Corporate Finance but failing to apply the check to the policy, or failing to apply all of the money, which resulted in the Insured's bank account being drafted twice. (Ex. A4 at 2.) Bigelow disputes that she improperly handled any of

the files cited by Giddings as an example of a file on which Bigelow had incorrectly applied premium. (Bigelow Dep., Ex. A1, at 65:2-10.) The court has seen nothing in the record supporting Bigelow's disagreement. Additionally, Bigelow apparently only disputed one of the files in her handwritten note, which stated "But not this file – I got only the checks and I was expected to find the file myself. I was very busy and the check got put aside." (Ex. E at 2; Bigelow Dep., Ex. A1, at 62:6-12.)

9.   Central States also documented in the Coaching Memo Bigelow's errors in using the File Tracking System. (Ex. A4 at 3; Bigelow Dep., Ex. A1, at 66:9-67:6.) Underwriters were to enter a three-digit number code in one of the screens in LifePRO, one of Central States' software programs, to indicate the location of the file. (Bigelow Dep., Ex. A1, at 66:9-67:6.) Central States stated in the Coaching Memo, "[Another Central States employee] has worked with you several times regarding the function of File Tracking. The purpose is to show the location of the file and or who has the file, it is not a note system." (Ex. A4 at 3.)

10.   The Coaching Memo also addressed Giddings' assessment of Bigelow's performance with respect to other issues, such as handling money transactions, activating policies, using the pending sorter, level of underwriting, filing point of sale (POS) interview forms, assuring appropriate assembly and retention of phone history interview forms (PHI's), and completing work measurement sheets. (Ex. A4.) Central States stated in the conclusion of the Coaching Memo, "This is to serve as a written warning to let you know that your performance is not acceptable and if not corrected will result in further disciplinary action up to and including termination of your employment." (Ex. A4 at 5.) At the bottom of the Coaching Memo, Bigelow indicated in handwritten notes "I do not feel all the points brought out in this memo are presented with complete facts." (Ex. A4 at 5; Bigelow Dep., Ex. A1, at 76:14-24.) However, in her deposition, Bigelow could not identify any missing facts. (*Id.*) Nothing in the Coaching Memo or in Bigelow's handwritten comments mentions age. (Ex. A4.)

11.     Following the January 21, 2004 meeting, Bigelow continued to make what Giddings believed to be errors and poor judgment calls. (Giddings Aff., Ex. B, at ¶ 7.)  For instance, in late January 2004, Bigelow was the underwriter for file #0701249096 for a husband and wife. (Giddings Aff., Ex. B, at ¶ 8.)  Central States' practice was to issue husbands' and wives' policies together when possible. (Bigelow Dep., Ex. A1, at 99:24-100:2; Giddings Aff., Ex.B, at ¶ 9.)  Giddings told Bigelow to issue the policy for the husband but to hold it before issuing it until Central States could determine whether the wife was also eligible.  (Giddings Aff., Ex. B, at ¶ 10.)  Bigelow instead requested medical records and a new application from the husband.  (Giddings Aff. at ¶ 10.)  Bigelow's request of the medical records is documented in her handwriting in an Underwriting Phone Memo.  (Giddings Aff., Ex. B, at ¶ 11; Bigelow Dep. Ex. 10, Ex. A5; Bigelow Dep., Ex. A1, at 99:5-10.)  Bigelow did not remember this particular application. (Bigelow Dep., Ex. A1, at 99:3-19, 100:7-24.)  Bigelow believes her mishandling of a husband-wife application was one of the reasons Central States terminated her employment, though she does not remember whether this particular application was the husband-wife application she mishandled. (Bigelow Dep., Ex. A1, at 44:13-45:2, 99:20-23.)

12.     Bigelow made other mistakes after January 21, 2004 and the Coaching Memo. In particular, Bigelow mishandled money and sent out an incorrect refund check (Giddings Aff., Ex. B, at ¶ 12), made extensive file tracking mistakes (Giddings Aff., Ex. B, at ¶ 13), provided poor customer service to an Italian-speaking applicant (Giddings Aff., Ex. B, ¶¶ 14-19), and offered coverage to an applicant who Bigelow was instructed to reject. (Giddings Aff., Ex. B, ¶¶ 20-22.) Bigelow either agrees that she made these performance-related mistakes, or cannot remember making them. (Bigelow Dep., Ex. A1, 91:23-92:13; 92:17-25; 101:2-102:14; 102:16-105:6; 105:15-25; 106:1-108:4; 177:11-20.)

-7-

13.     Bigelow testified regarding a conversation between her and Giddings on March 6, 2004. According to Bigelow, she approached Giddings in her cubicle to request some time off. (Bigelow Dep., Ex. A1, at 87:15-88:8, 89:8-17.) Then Bigelow asked Giddings "how are things going?" and Giddings responded "Just fine." (*Id.*) That was the end of the conversation. (*Id.* at 89:18-21.) This conversation took less than 30 seconds and was completely spontaneous. (Giddings Aff., Ex. B, at ¶ 24.) It was not a planned or formal evaluation, and Giddings did not have at that time any current information before her regarding Bigelow's actual performance. (*Id.* at ¶ 24.)

14.     Central States terminated Bigelow on March 11, 2004. (Bigelow Dep. Ex. 13, Ex. B3.) Bigelow was 69 years old at the time of her termination. (Bigelow Dep., Ex. A1, at 8:19-20, indicating she was born in 1934.) On the day of Bigelow's termination, Giddings called Bigelow and asked her to come to the Human Resources department, where Bigelow was again met by Giddings and Schoen. (Bigelow Dep., Ex. A1, at 114:15-115:2.)

15.     Bigelow does not remember anything about this meeting other than being called down to Human Resources by Giddings, being given a piece of paper, and being told to go home. (Bigelow Dep., Ex. A1, at 118:4-17.) Bigelow does not remember seeing her termination letter, Exhibit B3, before or whether the piece of paper she was handed during her March 11 meeting with Giddings and Schoen was this termination letter. (*Id.* at 117:10-21, 118:4-17.) Giddings made the final decision to terminate Bigelow. (Giddings Aff., Ex. B, at ¶ 26.)

16.     Bigelow states that the only basis for her claim of discrimination is that she does not believe Central States terminated her based on her performance. (Bigelow Dep., Ex. A1, at 109:7-25.) Bigelow also testified that Giddings never said anything to her about her age. (*Id.* at 112:16-22.) The only Central States employee that said something to Bigelow about her age was a co-worker, Jim Kay, and his comments

-8-

were only in reference to her underwriting experience and credentials. (*Id.* at 111:2-112:15.)

## II.   ANALYSIS

Condensed and summarized, Central States argues that it is entitled to summary judgment because Bigelow cannot prove a prima facie case of age discrimination. Further, even if Bigelow can adequately set forth a prima facie case, Central States argues that it had a legitimate, nondiscriminatory reason for terminating her which was not pretextual. For the reasons set forth below, the court agrees with Central States.

### A.   Standard of Review

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Specifically, in the ADEA context, the question is whether, as a matter of law, "the evidence is insufficient for a reasonable jury to infer age discrimination." *Rothmeier v. Invest. Advisers, Inc.*, 85 F.3d 1328, 1335 (8th Cir. 1996). Where the evidence is insufficient for a "reasonable trier of fact to infer discrimination," the trial court may award summary judgment. *Id.*

## B.  ADEA Claim

Liberally construed, Bigelow claims that Central States violated the ADEA because she performed her job satisfactorily and exceeded the performance of younger employees doing her same job, yet was terminated. (Compl. at ¶ 7.)

The ADEA prohibits employers from discriminating against employees on the basis of age. 29 U.S.C. § 623(a)(1). In order to prevail on an age discrimination claim, a plaintiff must show "intentional discrimination against the plaintiff on account of the plaintiff's age." *Rothmeier*, 85 F.3d at 1331. A plaintiff can prove intentional discrimination by either presenting direct evidence of discrimination based on age or by presenting circumstantial evidence. *Id.* at 1332 (citations omitted). Where a plaintiff relies only on circumstantial, rather than direct, evidence, the court engages in a "three-stage burden-shifting analysis." *Id.* As set forth above, "[b]efore a court can allow a discrimination case involving only circumstantial evidence to go to a jury, it must find sufficient evidence that would allow a reasonable factfinder to infer that age was a determinative factor in the adverse employment action." *Mayer v. Nextel West Corp.*, 318 F.3d 803, 810 (8th Cir. 2003).

Viewing the facts in the light most favorable to Bigelow, the court finds that Bigelow presented no direct evidence of discrimination based on age. To the contrary, Bigelow states in both her complaint and in her deposition that the basis of her age discrimination claim is only that Central States had no other reason for which to terminate her. (Compl., filing no. 1, at ¶ 7(a); Bigelow Dep., Ex. A1, at 109:7-25.) In addition, Bigelow testified that, other than comments acknowledging her underwriting experience and credentials, no one at Central States ever commented about her age. (Bigelow Dep., Ex. A1, at 112.)

Because Bigelow presented no direct evidence of discrimination, the court must conduct the three-stage burden-shifting analysis. *Rothmeier*, 85 F.3d at 1332. The burden-shifting analysis is set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny.[2] In the first stage of the *McDonnell Douglas* analysis, the plaintiff bears the burden of establishing a prima facie case of discrimination. *Rothmeier*, 85 F.3d at 1332 (citations omitted). Once a plaintiff establishes a prima facie case, the second stage of the analysis shifts the burden to the defendant to articulate a legitimate, nondiscriminatory reason for their actions. If the defendant satisfies its burden, in the third stage of the analysis, the burden shifts back to the plaintiff to show that the defendant's proffered reason was pretextual. *McDonnell Douglas*, 411 U.S. at 802, 804. However, "the plaintiff retains at all times the ultimate burden of persuading the trier of fact that the adverse employment action was motivated by intentional discrimination." *Rothmeier*, 85 F.3d at 1332 (citations omitted).

---

[2] Although *McDonnell Douglas* addressed discrimination claims in the context of Title VII, the same analytical framework "applies with equal force" to claims made under the ADEA. *Rothmeier*, 85 F.3d at 1332. n.5.

1. Stage One–Bigelow's Prima Facie Case

In the first stage of the *McDonnell Douglas* analysis, the plaintiff bears the burden of establishing a prima facie case of discrimination. *Rothmeier*, 85 F.3d at 1332 (citations omitted). To establish a prima facie claim of age discrimination, a plaintiff must show (1) she was at least forty years old; (2) she was terminated; (3) she was meeting the employer's reasonable expectations at the time of the termination; and (4) she was replaced by someone substantially younger. *Mayer*, 318 F.3d at 807; *see also Haas v. Kelly Servs., Inc.*, 409 F.3d 1030, 1035 (8th Cir. 2005).

Bigelow was 68 years old at the time of her hiring, and was terminated from Central States less than one year later. (Bigelow Dep., Ex. A1, at 8:19-20; Ex. B3.) Thus, Bigelow established prongs one and two of her prima facie case.

As to prong three of Bigelow's prima facie case, the relevant inquiry is the decision maker's perception and judgment regarding the employee's performance. *Brooks v. Ameren UE*, 345 F.3d 986, 988 (8th Cir. 2003); *see also McPheeters v. Black & Veatch Corp.*, 427 F.3d 1095, 1104 (8th Cir. 2005). The employee's own opinions about their performance are irrelevant. *Brooks*, 345 F.3d at 988.

Even viewed in the light most favorable to Bigelow, the undisputed facts detail a litany of performance failures on the part of Bigelow. These performance failures (detailed above in section I of this memorandum and order) were presented to Bigelow in the January 21, 2004 Coaching Memo and during the meeting regarding the Coaching Memo. (Ex. A4; Giddings Aff., Ex. B, at ¶¶ 5-7.) The Coaching Memo warned Bigelow that failure to improve her performance immediately may result in termination of her employment. (Ex. A4 at 5.) Although Bigelow cannot remember many of these failures specifically, she does admit to making mistakes both before the January 21, 2004 meeting and after. (Bigelow Dep., Ex. A1, 54:7-14; 56:2-58:6; 62:6-12; 76:14-24; 91:23-92:13; 92:17-25; 101:2-102:14; 102:16-105:6; 105:15-25;

106:1-108:4; 177:11-20.) Bigelow's lack of memory is not enough to raise an issue of fact as to some of the items contained in the Coaching Memo. Regardless, Bigelow agrees that she made many of the mistakes detailed in the Coaching Memo and continued to make mistakes after reviewing the Coaching Memo. Because "evidence, not contentions, avoids summary judgment," and because Bigelow failed to meet Central States' reasonable expectations, Bigelow has not established prong three of her prima facie case of age discrimination. *See Mayer*, 318 F.3d at 809.

In addition, the record is silent regarding who, if anyone, replaced Bigelow upon her termination. Although there are references to younger individuals serving in the same job concurrently with Bigelow, nowhere do Bigelow or Central States address prong four of the prima facie case analysis. Regardless, Bigelow has not established two of the four prongs necessary for a prima facie case as set forth by *McDonnell Douglas*. The court therefore grants summary judgment in favor of Central States.

### 2. Stage Two–Central States' Legitimate, Nondiscriminatory Reasons for Terminating Bigelow

Although the court has already determined that summary judgment in favor of Central States is warranted, even if Bigelow had met her burden to prove a prima facie case of age discrimination, Central States has also established a legitimate, nondiscriminatory reason for terminating Bigelow.

Central States presented substantial evidence that the reason for Bigelow's termination was due to her poor performance. (*See* Exs. A4, A5, and B (with attachments).) Poor performance is a legitimate, nondiscriminatory reason for termination. *Mayer*, 318 F.3d at 807.

-13-

Additionally, the court notes that Bigelow was hired at age 68, and terminated at age 69. (Bigelow Dep., Ex. A1, at 8:19-20; Ex. B3.) Bigelow was hired and terminated by the same individual, Kathy Giddings. (Bigelow Dep., Ex. A1, at 25:3-5; Giddings Aff., Ex. B, at ¶¶ 3, 26.) The court, as in *Rothmeier*, finds it "incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired" Bigelow at age 68 "suddenly developed an aversion to older people" less than one year later. *Id.* at 1337 (citations omitted).

### 3. Stage Three–Pretextual Reasons for Termination

Because Central States had a legitimate, nondiscriminatory reason for terminating Bigelow, Bigelow must then show that the reason given was "a pretext *for* discrimination." *Rothmeier*, 85 F.3d at 1334 (emphasis in original). In order to show pretext, a plaintiff must prove both that the reason given by the employer is false and that discrimination is the "real reason" for the plaintiff's termination. *Id.*

Bigelow submitted no evidence to show that the defendant's proffered reasons for terminating her were pretextual. Although Bigelow states in both her deposition and in her complaint that Central States' reasons for terminating her were pretextual and based on her age, she has submitted absolutely no evidence, even circumstantial, in support of that contention.

At most, there is a question of fact regarding whether Bigelow committed all of the performance failures set forth in the Coaching Memo, or whether Bigelow committed only the performance failures which she can remember and has acknowledged. This question does not create an issue of material fact because it does not show that all of the reasons given were false nor that discrimination was the real reason for Bigelow's termination.

Additionally, even if the Coaching Memo and subsequent documentation of Bigelow's performance failures were inaccurate in some respects, "a proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the termination. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006). Absent another reason, the court is not to sit as a super-personnel department to oversee management decisions. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136-37 (8th Cir. 1999). The court therefore concludes that there is insufficient evidence to submit this claim to a jury. *See Mayer*, 318 F.3d at 809.

### C. Nebraska Act Claim

Nebraska state courts address claims under the Nebraska Act using the same analysis as the federal courts under the ADEA. *Newhouse v. McCormick*, 110 F.3d 635, 643 (8th Cir. 1997); *see also Allen v. AT&T Technologies, Inc.*, 423 N.W.2d 424, 431 (1988) ("We hereby adopt the same burden and method of proof for cases arising under the subject act. By so doing, we conform to the federal practice with respect to the federal Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* which the subject act closely parallels."). Therefore, for all of the reasons set forth in this order, the court grants Central States' motion for summary judgment as to Bigelow's Nebraska Act claim.

### III.   CONCLUSION

As set forth in this memorandum and order, there are no disputed issues of material fact regarding either of the claims made by Plaintiff in her complaint. Therefore, the court grants summary judgment in favor of Defendant Central States on both claims.

IT IS THEREFORE ORDERED THAT:

1. Defendant Central States Health & Life Co.'s motion for summary judgment (filing no. 25) is granted as to both counts one and two of the complaint (filing no. 1).

2. A separate judgment will be entered in accordance with this memorandum and order.

3. The final pretrial conference scheduled for September 14, 2007 at 10:00 a.m. is cancelled. The trial set for October 22, 2007 at 8:30 a.m. is cancelled.

4. The Clerk of the court is directed to send a copy of this memorandum and order and the judgment to Plaintiff at her last known address.

September 11, 2007.          BY THE COURT:

                             s/ Joseph F. Bataillon
                             Chief United States District Judge